THE STATE OF FLORIDA *ex rel.*, DANIEL A. FINLAYSON, *Relator, v.* ERNEST AMOS, AS COMPTROLLER OF THE STATE OF FLORIDA, *Respondent.*

Opinion filed June 22, 1918.

Petition for Rehearing denied August 8, 1918.

1. When the language of a Statute is capable of two constructions, the Courts may resort to the history of its passage through the Legislature, to ascertain the Legislative intent.

2. Where the Legislative Journals show that in the passage of an Act through the Legislature, language which gave to the Act the construction placed on it by the Comptroller, was stricken from the bill by amendment, and a clause substituted therefor that conflicts with the departmental construction, the Legislative intent as shown by its act in changing the language of the Act will be adopted by the Court.

A case of original jurisdiction.

Peremptory writ awarded.

*J. H. Shuman* and *D. A. Finlayson,* for Relator;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for Respondent.

BROWNE, C. J.—The petitioner who is the owner of an automobile of 32 horse power with a seating capacity of one and not more than five persons, made application to the Comptroller under the provisions of Chapter 7275, Acts of the Legislature of 1917, to have his automobile registered in accordance with law.

He sent five dollars with his application, but the Comptroller refused to register his car, or to assign him a number, or to furnish him with metal number plates so that he might operate his car upon the public highways of the State. An alternative writ of mandamus was issued, and in his return the Comptroller states that the registration fee for the petitioner's car is $12.00 and not $5.00, and demands $7.00 more from the petitioner before registering his car and otherwise complying with the law.

The issue made by the pleadings, presents for determination by this Court the construction to be placed on Series B and C of Sec. 6 of the automobile license Act of 1917, that reads in part as follows:

"The following fee shall be paid to the Comptroller upon the registration or re-registration of motor vehicles in accordance with the provisions of this Act.

### PASSENGER VEHICLES.

Series A—Motorcycles. . . . . . . . . . . . . . . . . . . . . . . .$ 2.00
Series B—For any automobile and other motor
          driven vehicle with a seating capacity
          of one and not more than five persons. . 5.00
Series C—Automobiles of more than 25 h. p., and
          not more than 40 h. p. . . . . . . . . . . . . . . . 12.00
Series D—Automobiles of more than 40 h. p., and
          not more than 60 h. p. . . . . . . . . . . . . . . . 15.00
Series E—Automobiles of more than 60 h. p. . . . . . . 30.00
Any type of automobile seating ten or more passengers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .100.00"

The petitioner contends that as his automobile has a seating capacity of not more than five persons, he should

pay a fee of $5.00 as provided for in Series B. The Comptroller holds that as the automobile is of more than 25 h. p. and not more than 40, he must pay a fee of $12.00.

In construing a Statute it is the duty of the Court to give force and effect to every part of it to carry out the intent of the Legislature, if possible. Where the language is clear the intent is ascertained from the language of the Act itself, and it is the duty of the Court to give to the language used its plain and natural meaning, for the Legislature is presumed to mean what it has plainly expressed, and there is no field for construction. If the Act contains contradictory provisions the Courts will endeavor to so construe it as to give force and effect to the entire Act and harmonize it if possible, and failing in this, they seek light from other sources. Where the language is plain and unequivocal, the Courts must follow it implicitly, but where it is doubtful or ambiguous, "it is the duty of the Court to remove the doubt by deciding it; and when the Court has given its decision, the point can no longer be considered doubtful." Lewis' Sutherland Statutory Construction, Sec. 363. They should not, however, adopt an arbitrary conclusion as to what was the intention of the Legislature, if there is any way in which that may be ascertained. Lewis' Sutherland on Statutory Construction, Section 363, says: "If a Statute is valid, it is to have effect according to the purpose and intent of the lawmaker. The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. * * * A legislative intention to be efficient as law must be set forth in a statute; it is therefore a written law. How the intention is to be ascertained is only answered by the principles and rules of exposition. If a Statute is plain, certain and unambiguous, so that

no doubt arises from its own terms as to its scope and meaning, a bare reading suffices; then interpretation is needless. And where the intention of a Statute has been ascertained by the application of the rules of interpretation, they have served their purpose, for all such rules are intended to reach that intent. The sole authority of the Legislature to make laws is the foundation of the principle that courts of justice are bound to give effect to its intention. When that is plain and palpable they must follow it implicitly. The rules of construction with which the books abound apply only where the words used are of doubtful import; they are only so many lights to assist the Courts in arriving with more accuracy at the true interpretation of the situation."

It is contended by the Comptroller that because Series C fixed the amount of the license to be paid for automobiles of more than 25 and not more than 40 h. p., Series B should be construed as including only automobiles that have 25 h. p. or less. On the other hand it is contended, that as all automobiles without regard to their h. p. with a seating capacity of one and not more than five persons, have been provided for in Series B, that Series C must be construed in connection with Series B, and that Series C. D and E were intended to apply only to automobiles of a seating capacity of more than five and less than ten persons. There seems to be more reason for the latter construction than for the former, because Series B uses the most comprehensive and inclusive word "any" when creating a class that is to be governed solely by seating capacity. It makes an all-embracing class and includes in it "any automobile" of a seating capacity of one and not more than five persons, without regard to horse power, weight, speed, capacity of any other quality. Series C, D and E therefore provide for other auto-

mobiles than those included in Series B, that have a seating capacity of more than five persons and not more than ten.

The Act makes six classifications of motor driven passenger vehicles, and in two, seating capacity is made the sole test of the amount of license tax to be paid. Neither of these classifications refers in any way to horse power.

It was admitted by the Attorney General in the argument before this Court, that in deciding which class of automobiles should pay a license tax of $100.00, the Comptroller made seating capacity and not horse power the test. That an automobile of a seating capacity of ten or more passengers is required to. pay $100.00 license without regard to its horse power, but that in determining which class of automobiles should pay only $5.00, the horse power was made the test. No reason is given for this distinction, nor can it be justified under any construction of the law.

Owing to the conflicting provisions of the law under consideration, it would be difficult to. reach a perfectly satisfactory conclusion if we had no light to guide us except the language of the law itself. In such a dilemma we may seek for light in the history of the passage of the Act through the Legislature.

In the case of McCluskey v. Cromwell, 11 N. Y. 593, the Court said: "It is beyond question the duty of Courts in construing Statutes, to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. But in the construction, both of Statutes and contracts, the intent of the framers and parties is to be sought first of all, in the words and language employed, and if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the framers of the instrument, there is no

occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning."

Lewis' Sutherland on Statutory Construction, Section 470, says: "The proceedings of the Legislature in reference to the passage of an Act may be taken into consideration in construing the Act. Thus the reports of committees made to the Legislature have been held to be proper sources of information in ascertaining the intent or meaning of the Act. Amendments made, or proposed and defeated, may also throw light on the construction of the Act as finally passed, and may properly be taken into consideration."

In Edger v. Randolph County, 70 Ind. 331, the Court said: "But it has never been held by this Court, that for the purpose of construction or interpretation, and with the view of ascertaining the legislative will and intention in the enactment of a law, the Courts may not properly resort to the journals of the two legislative bodies to learn therefrom the history of the law in question, from its first introduction as a bill until its final passage and approval. Where, as in this case, a Statute has been enacted, which is susceptible of several widely differing constructions, we know of no better means for ascertaining the will and intention of the Legislature, than that which is afforded, in this case, by the history of the Statute, as found in the journals of the two legislative bodies."

If after the adoption of the amendment the Legislature through inadvertence failed to change the provision of the Act which seemingly conflicted with the amendment, such failure in no wise destroyed the governing force

of the latest expression of the legislative will and intent, as evinced by the amendment, and where the law is capable of two constructions, that which is in accord with the amendment must prevail.

"It is easy to understand how in the hurry of legislation there may be a failure, in connection with the adoption of an amendment, carefully to eliminate provisions which are really intended to be superseded; but it would discredit the intelligence of the law-making power to indulge the supposition that in the adoption of an amendment, containing such a definite statement of what was intended as is found in the amendment in question, the General Assembly failed to appreciate the force of such words." Arnett v. State, 168 Ind. 180, 80 N. E. Rep. 153, 8 L. R. A. (N. S.) 1192.

In State v. Burr, 16 N. D. 581, 113 N. W. Rep. 705, the Court said: "As originally introduced, the emergency clause was a part of the Act the same as it now appears in the Act. When the bill was under consideration upon its final passage in the Senate, the Act was amended by entirely striking out Section 4 as it was when introduced, and inserting in lieu thereof the Section 4 of the Act as it now appears. Section 5 of the Act as originally introduced was amended so as to read as Section 5 now does, and Section 5 of the original Act was made to read as Section 6 now does. As amended in these particulars, the bill passed the Senate, and, after once having failed to pass in the House, was reconsidered, passed unchanged, and sent back to the Senate. From the proceedings in the Senate when Section 4 was stricken out and a provision for the election of the first incumbent to the office at the next general election inserted, it becomes apparent that it was the will of the Senate that the office should be filled by election, and

not by appointment. This was a positive, unequivocal expression of what was the intent of the Senate on that question when that question alone was under consideration, and must govern notwithstanding seeming contradictory provisions that remained in the bill, undoubtedly through inadvertence. The force of this amendment of Section 4 shuts out all room for doubt as to whether the office was to be filled by election by the people, or by appointment, and forecloses any necessity of attempting to reconcile the inharmonious sections by giving to the words 'election' and 'chosen' synonymous meaning. The controlling effect of sections adopted as parts of laws by amendment has often been recognized and given full effect in cases where the amendment did not signify a specific intent in so prounounced a manner as the one under consideration."

The case of Small v. Small, 129 Pa. St. 366, 18 Atl. Rep. 497, was an action in assumpsit brought by a wife against her husband. It was contended that a right of action was given her by a Statute which provided that "husband and wife shall have the same civil remedies upon contracts in their own name and right, against all persons, for the protection and recovery of their separate property, as unmarried persons." The Court in deciding upon the effect of this provision of the law said: "This language is general and unlimited. It makes no exception of actions against each other, and, taken by itself, its natural meaning is perhaps, broad enough to include them without straining." There were, however, other provisions seemingly contradictory to this construction, and the Court had recourse to the legislative journals to ascertain what was the legislative intent, and found that the Act was originally introduced contained after the words "against all persons" the words "including each*

other." The words "including each other" were stricken out on amendment, and the section passed without them. This the Court said "confirmed almost to a demonstration" that the Legislature did not intend for husband and wife to sue each other.

In the case of Barnard v. Gall, 43 La. Ann. 959, 10 South. Rep. 5, the Court had two license Acts under consideration. The one of 1886 contained "saw mills" among other occupations on which license taxes were imposed. In 1890 another license Act was passed, and the section providing for license taxes was identical with the provision of the Act of 1886, except that "saw mills" were omitted in the last Act. It was contended that because the Act of 1886 had not been repealed, its provisions were in force, and saw mills subject to a license. From reading the two Acts this contention seemed plausible. But the Court said: "We are also referred to the official journal of the House of Representatives showing that the Act of 1890 originally presented contained the word 'saw mills' and that an express amendment to strike it out was offered and adopted. * * * This amendment established very clearly the legislative intent to exclude the business of saw mills from license taxation."

The Act under consideration was originally introduced as Senate Bill No. 262. As it passed the Senate and went to the House, Series B read, "automobiles of not more than 25 h. p. $7.00." In the House an amendment was adopted to strike out the words "automobiles of not more than 25 h. p. $7.00," and insert in lieu thereof the following: "For any automobile and other motor driven vehicle with a seating capacity of one and not more than five persons $5.00." There were several other amendments adopted by the House, and when the bill was reported back to the Senate that body refused to concur

in any of them. A committee of conference was then appointed, which recommended that the House recede from some of its amendments and that the Senate concur in others. Among those that the Senate concurred in was the one that changed the basis for fixing the amount of a license to be paid on automobiles in Series B from "Horse power" to "Seating capacity."

It was through no inadvertence that the Legislature did this, because the amendment was first considered and adopted in the House, next considered and rejected in the Senate, then considered by a conference committee composed of members from both houses, and thereafter adopted by the Senate upon recommendation of the conference committee.

The ruling of the Comptroller nullifies the amendment and restores to the bill that part of it which the Legislature rejected after most thorough consideration. If the amendment had not been adopted, the Comptroller's interpretation would be correct, but he ignores the amendment, and interprets the law as if it had passed as originally introduced in the Senate. There is no authority for a department of the government charged with the execution of a law, to restore a provision which the Legislature strikes from the Act when in progress of its passage. Whatever the Legislature does within its constitutional authority, no other department of the government may change, modify, alter or amend.

It seems quite clear to us that when the Legislature struck from the Act under consideration as originally introduced, language identical with the construction now placed upon Series B by the Comptroller, the Legislature in the clearest and most positive manner showed its disapproval of his construction, and this Court must enforce the clearly expressed legislative will.

We, therefore, find that Series B of Chapter 7275, Acts of 1917, provides for a license tax of only five dollars on any automobiles or other motor driven vehicles with a seating capacity of one and not more than five passengers, without regard to horse power.

The peremptory writ is awarded.

TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD, J., *dissenting.*— The contemporaneous construction given to a Statute by the Executive Officer charged with its enforcement, though not controlling, is, when not in conflict with organic law or the plain intent of the Act, entitled to muc hconsideration by the Courts; and such interpretation should not be disregarded or overturned unless it is clearly erroneous.

Apparently the intent of the Statute considered as an entirety is to impose license taxes for the operation of passenger automobiles with reference to their hose power as well as to their seating capacity, the power, weight and speed of the automobiles and the weight of the loads being special considerations in the use of the roads; therefore, the provisions as to horse power and also as to seating capacity should be complied within the payment of the license taxes imposed.

This appears to be the interpretation given to the Statute by the State Comptroller, whose duty it is to enforce it; and as such interpretation does not clearly appear to be erroneous, but is apparently correct, it should not be overturned.

WEST, J., *dissenting*.—The State Comptroller, the officer of the executive department of the State Government charged with the duty of construing and enforcing the Statute under consideration, found it necessary in the performance of this duty to place an interpretation upon it. The rule in such cases is stated by this Court in the case of Bloxham, Comptroller, v. Consumers' Electric Light & St. R. Co., 36 Fla. 519, 18 South. Rep. 444, at page 540, as follows: "Besides the judicial construction of Statutes, there is known to the law another kind of construction. This kind of construction has special application to Statutes made for the regulation of the different departments of the government, and is the interpretation put upon them by the actual administration of them by such departments. As distinguished from judicial construction, it is called the practical construction of Statutes. While not of such high authority as a judicial interpretation of the Act, such practical construction of the class of Statutes referred to, when not in conflict with the Constitution or the plain intent of the Act, is of great persuasive force and efficacy."

In construing a Statute "that construction is favored which gives effect to every clause and every part of the Statute, thus producing a consistent and harmonious whole" (Goode v. State, 50 Fla. 45, 39 South. Rep. 461) and "the legal presumption is that the Legislature did not intend to keep really contradictory enactments in the Statute books, or to effect so important a measure as the repeal of a law without expressing an intent to do so. An interpretation leading to such a result should not be adopted unless it is inevitable. The rule of construction in such cases is that if the Courts can by any fair, strict or liberal construction find for the two pro-

visions a reasonable field of operation without destroying their evident intent and meaning, preserving the form of both, and construing them together in harmony with the whole course of legislation, it is their duty to do so." Curry v. Lehman, 55 Fla. 847, 47 South. Rep. 18; State ex rel. Luning v. Johnson, 71 Fla. 363, 72 South. Rep. 477.

Applying the foregoing rules to this case the construction placed upon the Statute by the Comptroller seems to be fully warranted and should not in my opinion be disturbed. The apparently conflicting provisions of Series B and C are harmonized by the Comptroller's construction, and the object and design of the Statute is thereby promoted.

It is apparent when the whole Statute is taken into consideration that it was the legislative intent that automobiles which are calculated to do greater damage to the public highways should be required to pay a larger amount into the fund which is appropriated by this Statute for the repair of such damage and the maintenance of such highways.

To hold that a heavy car of high power should under this Statue be classified without regard to horse power, and, if it has a seating capacity of "not more than five persons" put it in the same class, with respect to the fees charged, as the light car of low power loses sight entirely of the primary purpose of the legislation and discriminates against the light car and in favor of the heavy car, which in my opinion was not the intention of the Legislature; and neither the language employed nor any action taken by them requires that construction to be placed upon the Statute.

I therefore dissent.