Don J. Caton City Attorney Pensacola
QUESTIONS:
1. What is the meaning of the term `ultimate control' as used in s. 112.66(7), f. s.?
2. Does s. 112.66(7) require that an irrevocable trust be contained in a special act of the Legislature or does it require only that an irrevocable trust be authorized by a special act of the Legislature?
3. Does s. 112.66(8) vest control of the assets of municipal pension systems, including investment of the pension funds, in the governing body of a municipality?
4. Can the City of Pensacola Pension Board, as created by ch. 61-2655, Laws of Florida, as amended, be considered a `plan administrator' within the meaning of s. 112.66(2)?
SUMMARY:
Until judicially or legislatively determined otherwise, the phrase `remain under the ultimate control of the governmental unit responsible for the retirement system or plan,' as used in s.112.66(7), F. S., does not disturb, alter, or divest the continuing, ultimate legislative authority of the governing body of a municipality over the municipality's public employee retirement system or plan to adjust or change retirement benefits. The Florida Protection of Public Employee Retirement Benefits Act was enacted to implement the constitutional provision contained in s. 14 of Art. X, State Const., in order to ensure that any increase in the benefits of public employee retirement plans is funded on a sound actuarial basis and to establish `minimum standards for the operation and funding of public employee retirement system and plans.' However, to the extent that there are no irreconcilable conflicts with its minimum standards, existing laws, general or special, and ordinances enacted pursuant thereto which govern the management, administration, and control of the retirement system or plan and its assets and liabilities or trust funds remain in full force and effect.
The requirement of s. 112.66(7), F. S., that an `irrevocable trust' for the purpose of managing and controlling the retirement system or plan be created by `special act of the Legislature' is a limitation on the legislative power of units of local government. However, such `irrevocable trust' need only be authorized by or created pursuant to a special act of the Legislature; there is no extraordinary requirement that the `irrevocable trust' itself be established and set forth in detail in a special act of the Legislature.
Section 112.66(8), F. S., requires that any instrument, ordinance, or statute created or enacted for the operation of any public employee retirement system or plan provide that all assets of such retirement system or plan be held in trust by a board of trustees or, when an irrevocable trust does not exist, by the affected governmental entity. Subsection (8) does not expressly or implicitly purport to effectuate a substantive alteration or transfer of the control and management of the administration and operation of a retirement system or plan or the investment and control of such plan's trust assets.
The City of Pensacola Pension Board can be designated the `plan administrator' of any retirement system or plan of the city by any law, instrument, or ordinance enacted pursuant thereto that amends the city's pension or retirement system within the purview of and for the purpose of the Florida Protection of Public Employee Retirement Benefits Act, part VII of ch. 112, F. S.
The Florida Protection of Public Employee Retirement Benefits Act, part VII of ch. 112, F. S., was enacted by ch. 78-170, Laws of Florida, to implement s. 14 of Art. X, State Const. Section 14, adopted at the general election on November 2, 1976, provides:
 A governmental unit responsible for any retirement or pension system supported in whole or in part by public funds shall not after January 1, 1977, provide any increase in the benefits to the members or beneficiaries of such system unless such unit has made or concurrently makes provision for the funding of the increase in benefits on a sound actuarial basis.
Section 112.61 expressly states that the legislative purpose for enacting part VII was to implement the provisions of s. 14, Art. X, State Const., in order to establish `minimum standards for the operation and funding of public employee retirement systems and plans.' It is clear that the constitutional provision, as implemented by ch. 78-170, as amended by ch. 79-183, Laws of Florida, is concerned with increases in public employee retirement benefits and the funding of such increases on a sound actuarial basis. The constitutional provisions and the `minimum standards for the operation and funding of public employee retirement systems and plans' established by part VII, ch. 112, are directed towards these protections. The provisions of part VII do not expressly or impliedly attempt to reorganize the legislative power and control over state or local governmental retirement systems and plans.
Section 112.66(7), F. S., provides that `[t]he assets and liabilities of a retirement system or plan shall remain under the ultimate control of the governmental unit responsible for the retirement system or plan, unless an irrevocable trust has been or is established for the purpose of managing and controlling the retirement system or plan . . . .' (Emphasis supplied.) This language evinces a legislative intent not to disturb existing governmental plans for the control of the assets and liabilities of state and local retirement systems or plans, except to the extent that part VII, ch. 112, F. S., establishes `minimum standards' for the sound actuarial protection of the operation and funding of public employee retirement systems and plans and for the funding of any increases in benefits thereof. For example, part VII does not expressly or impliedly by virtue of any irreconcilably conflicting provisions terminate the compulsory participation of local employees of a municipality that has elected to participate in the Florida Retirement System. See s.121.051(2)(b)1. and 4., F. S.
Section 112.62, F. S., inter alia, provides that `[t]he provisions of this part supplement and, to the extent there are conflicts, prevail over the provisions of existing laws and local ordinances relating to such retirement systems or plans.' See also the title to ch. 78-170, Laws of Florida. This provision, however, adds nothing to the general rules of statutory construction and their application. A later-in-time statute will be held to impliedly repeal or modify an earlier law only when the later statute is in irreconcilable conflict with or positively repugnant to the earlier law. See, e.g., Town of Indian Shores v. Richey,348 So.2d 1 (Fla. 1977); Sweet v. Josephson, 173 So.2d 444 (Fla. 1965); and City of New Smyrna v. Mathewson, 152 So. 706 (Fla. 1934). Further, repeal of a statute by implication is not favored. See Town of Indian Shores v. Richey, supra, and Mann v. Goodyear Tire Rubber Co., 300 So.2d 666 (Fla. 1974). Therefore, in general, unless some provision of a preexisting law or an ordinance enacted pursuant to some enabling law is in irreconcilable conflict with a `minimum standard' required by part VII of ch. 112, F. S., the preexisting law or ordinance continues to control the actual administration, management, and operation of its subject state or local retirement system or plan and the day-to-day working management and control of such retirement system's trust fund or trust funds and the assets thereof.
Furthermore, this office is without authority to modify or strike any existing law or ordinance adopted thereunder or to conclusively declare any law or part thereof to be impliedly modified or repealed; such power is exclusively a judicial prerogative. Several provisions of part VII of ch. 112, F. S., are presently the subject of lawsuits; thus, any conclusion stated in this opinion is subject to judicial construction and clarification otherwise. It is within this framework and these limitations that your questions must be considered.
AS TO QUESTION 1:
You question first the meaning of the term `ultimate control' as used in s. 112.66(7), F. S. Section 20 of ch. 79-183, Laws of Florida, reworded and substantially amended s. 112.66 and specifically amended subsection (7) of that statute to read:
 The assets and liabilities of a retirement system or plan shall remain under the ultimate control of the governmental unit responsible for the retirement system or plan, unless an irrevocable trust has been or is established for the purpose of managing and controlling the retirement system or plan, in which case the board of trustees shall have ultimate control
over the assets and liabilities of the retirement system or plan. Nothing herein shall absolve the governmental unit from being ultimately responsible for the payment of its contribution to a retirement system or plan nor remove from the governmental unit the ultimate authority to adjust benefits consistent with the Florida Statutes and the retirement system or plan; however, nothing contained herein shall be construed to permit the creation of such irrevocable trust except by special act of the Legislature. (Emphasis supplied.)
A statute must be construed as a whole so that it will be meaningful in all of its parts, and such construction must be guided by principles which will give effect to the legislative purposes of the act. See State v. Rodriguez, 365 So.2d 157 (Fla. 1978); State v. Amos, 79 So. 433 (Fla. 1918); and AGO 057-269. In this case all of part VII of ch. 112, F. S., must be construed as a whole in order to give effect to the legislative intent as expressed in ch. 78-170, Laws of Florida, as amended by ch. 79-183, Laws of Florida. Section 112.62, among other things, provides that the provisions of part VII `are applicable to anyand all units, agencies, branches, departments, boards, and institutions of state, county, special district, and municipalgovernments which participate in, operate, or administer a retirement system or plan for public employees . . . .' (Emphasis supplied.)
Chapter 78-170, Laws of Florida, originally enacted s. 112.66(8), F. S. (1978 Supp.) (renumbered and substantially reworded by ch. 79-183, Laws of Florida, as s. 112.66(7)) to provide that `[t]he assets and liabilities of a retirement system or plan shall remain under the ultimate control of the governmental unit responsible for the retirement system or plan.' (Emphasis supplied.) Chapter 79-183 revised this subsection to read as set out above. Chapter 78-170 contained no definitions of the terms employed therein, and ch. 79-183, which provided some definitions, did not define `governmental unit' or `ultimate control.' Except in s. 112.63(3), F. S., which employs the term `unit of local government,' nowhere is a term similar to `governmental unit' found in part VII of ch. 112, F. S. As stated in s. 112.62, the provisions of part VII are applicable to any and all units, agencies, branches, departments, boards, and institutions of state and municipal governments which participate in, operate, or administer a retirement system or plan for public employees. Thus, absent a more definite express definition in s. 112.625, or specific description or usage in the context, the term `governmental unit' is broad enough to encompass or relate to any agency, department, board, commission, office, or similar unit or subdivision of municipal government which by law and in fact manages, operates, or administers a retirement system or plan for public employees.
Section 112.66(8), F. S., requires that any instrument, ordinance, or statute under which a retirement system or plan operates `provide that all assets of such retirement system or plan shall be held in trust by the board of trustees or, when an irrevocable trust does not exist, by the governmental entity.' (Emphasis supplied.) The term `governmental entity' is defined by s.112.625(5), F. S., as enacted by ch. 79-183, Laws of Florida, to mean `the state, for the Florida Retirement System, and themunicipality or special district which is the employer of the member of a local retirement system or plan.' (Emphasis supplied.) Any unit, agency, branch, department, board, or institution of a municipal government which participates in, operates, or administers a retirement system or plan for public employees is not a municipality. Nor is the governing body of a municipality the municipality. Such units, boards, and bodies are but agents of or means by which the municipality operates and carries out its governmental and corporate functions and powers. Cf. 81A C.J.S.States s. 35 (1977).
The expressed legislative intent for the enactment of part VII of ch. 112, F. S., is the implementation of the provisions of s. 14 of Art. X, State Const., to ensure that all retirement systems or plans for public employees are managed, administered, operated, and funded in such a manner as to maximize the protection afforded to public employee retirement benefits. Section 112.61 expressly provides that part VII `establishes minimum standards for the operation and funding of public employee retirement systems and plans.' Part VII does not expressly or by operative effect of its provisions relocate, transfer, or divest the responsibility and authority for the management, administration, and operation of local or state employee retirement systems or plans. Cf. s.121.051(2)(b), F. S., which provides that a governing board of a municipality may elect to participate in the Florida Retirement System upon proper application. When a municipality has an existing retirement system covering employees in units which are proposed to be brought under the Florida Retirement System, it may participate only after holding a referendum in which all employees of the affected units have a right to participate. After the referendum is held, all future employees shall be members of the Florida Retirement System. Because of the numerous and varying laws, general and special or local, charters and charter acts, and implementing ordinances on the state and local level which govern the administration, management, operation, and funding of public employee retirement systems or plans, it is virtually impossible to determine in an opinion of this nature whether such preexistent laws, charters, or ordinances are in irreconcilable conflict with the minimum standards established by part VII of ch. 112 and are, therefore, superseded or supplanted by any particular provision or standard thereof. This office is without authority to modify, repeal, invalidate, or supplant any statute, charter, or ordinance. Such laws and ordinances must be afforded a presumption of validity until and unless judicially declared invalid. See
Shevin v. Metz Construction Co., Inc., 285 So.2d 598 (Fla. 1973); Village of North Palm Beach v. Mason, 167 So.2d 721 (Fla. 1964); and City of Miami v. Kayfetz, 92 So.2d 798 (Fla. 1957).
I am unable to say that the phrase `remain under the ultimate control,' as used in s. 112.66(7), F. S., constitutes anything more than a statutory recognition of existing laws and retirement systems and the continued force and effect of investiture of the control, management, and administration of public employee retirement systems or plans by preexistent laws, charters, or ordinances, or that such language constitutes such a positive repugnancy to any preexistent law, charter, or ordinance as to involve a repeal, removal, or supersedure of the law, charter, or ordinance. It is a reasonable assumption that such control or ultimate authority is already vested in the state and local legislative bodies. Indeed, s. 112.66(7) expressly recognizes that nothing contained in part VII `shall absolve the governmental unit from being ultimately responsible for the payment of its contribution to a retirement system or plan nor remove from the governmental unit the ultimate authority to adjust benefits consistent with the Florida Statutes and the retirement system or plan.' Subsection (7) merely provides that control or authority will remain with the unit responsible for the retirement or pension system, unless an irrevocable trust has been established prior to the effective date of part VII, or is established in the future by a special act for the purpose of managing and controlling the retirement system or plan.
It might be noted at this point that s. 112.66(2), F. S., requires that every retirement system or plan provide for a plan administrator, which is defined by s. 112.625(2), F. S., as the `person so designated by the terms of the instrument orinstruments, ordinance, or statute under which the plan is operated.' (Emphasis supplied.) Section 112.625(2) goes on to provide that if no plan administrator has been designated in such instrument or instruments, ordinance, or statute, the plan sponsor is to be considered the plan administrator. Section 112.66(8) employs substantially similar language in providing that `[t]he instrument or instruments, ordinance, or statute under which a retirement system or plan operates shall provide that all assets of such retirement system or plan shall be held in trust by the board of trustees or, when an irrevocable trust does not exist, by the governmental entity,' in this case, the municipality. See s.112.625(5).
Section 112.656(2), F. S., requires every public employee retirement system or plan to have `one or more named fiduciaries with authority to control and manage the administration and operation of the retirement system or plan.' Moreover, subsection (1) requires such fiduciaries to discharge their `duties with respect to a plan solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan.' Section 112.63(3), F. S., among other things, provides that
 [n]o unit of local government shall agree to a proposed change in retirement benefits unless the administrator of the system, prior to adoption of the change by the governing body, and prior to the last public hearing thereon, has issued a statement of the actuarial impact of the proposed change upon the local retirement system . . . .
Further, such statement must indicate whether the proposed change is in compliance with s. 14, Art. X, State Const., and with s.112.64, F. S. Section 112.63(4) requires the Division of Retirement of the Department of Administration to notify the localgovernment and request appropriate adjustment when the division fails to receive complete and accurate actuarial valuations or actuarial reports or statements of actuarial impact. If satisfactory adjustment is not made within a reasonable time, the affected local government or the division may petition for a hearing pursuant to s. 120.57, F. S. If the hearing officer recommends in favor of the division, the division shall then perform an actuarial review or prepare the statement of actuarial impact and charge the cost of such performance to the `governmental entity' the employees of which are covered by the retirement system or plan.
Section 112.66(7), F. S., speaks in terms of `ultimate control' of assets and liabilities of a retirement system or plan, whereas subsection (8) of that statute is concerned with the holding in trust of all assets of any such retirement system or plan as may be provided for by the instrument, ordinance, or statutes under which a retirement system or plan operates. Subsection (7) also makes it clear that the governmental unit responsible for a retirement system or plan remains `ultimately responsible' to pay its contribution to the retirement plan and that the governmental unit retains `ultimate authority' to adjust the benefits consistent with the Florida Statutes and the retirement system or plan.
In summary it seems apparent that — when the provisions of part VII of ch. 112, F. S., are reviewed in their entirety in light of the express legislative purpose for their enactment, which is to establish `minimum standards' for the operation and funding of public employee retirement systems and plans and to ensure that benefit increases are funded on a sound actuarial basis — to the extent that there are no irreconcilable conflicts with part VII's minimum standards, existing general or special laws, as well as ordinances enacted pursuant thereto, which govern the management, administration, and control of the retirement system or plan and its assets and liabilities or trust funds, remain in full force and effect. The governing body of a municipality retains ultimate legislative authority to adjust or change retirement benefits, subject to any general or special law or retirement plan providing otherwise. Of course, any municipality which has elected to participate in the Florida Retirement System pursuant to s.121.051(2)(b), F. S., has, to the extent the employees of any unit have been brought under this system, relinquished its ultimate legislative authority over the retirement system or plan covering the affected units. However, determination of which local governmental agency has actual working control over the administration and management of a public employee retirement system or plan and the investment of such plan's trust funds is beyond the scope of an opinion of this office. Such determination, necessarily based on the provisions of existing or future laws and implementing ordinances, remains the responsibility of the affected local governmental officials and, ultimately, the judicial branch of state government.
AS TO QUESTION 2:
You question whether s. 112.66(7), F. S., requires the irrevocable trust referred to therein to be contained in a special act of the Legislature or merely authorized by such special act. Section112.66(7), in pertinent part, provides that `nothing contained herein shall be construed to permit the creation of such irrevocable trust except by special act of the Legislature.' (Emphasis supplied.) This language requires that any irrevocable trust which is established for the purpose of managing and controlling a local governmental retirement system or plan must be created by a special act of the Legislature. The proviso is a limitation on the authority of the governmental agency or legislative body possessing the authority, home rule or statutory, to establish, amend, change, or modify a retirement or pension plan; it operates to prohibit the creation of an irrevocable trust by such agency or body except by virtue of a statute enacted by the Legislature. Preexistent trusts remain under the control of the board of trustees of the affected retirement system or plan. This proviso provides a means by which the Legislature can oversee or review proposals for the creation of irrevocable trusts in the interest of maximizing the protection of public employee retirement benefits. Obviously, the Legislature can create a trust for the management and control of a state retirement system or plan by a general act; thus, the limitation provided by s.112.66(7) applies only to units of local government. At the state level, trust funds may be created or established by statute, see,e.g., s. 121.021(36), F. S., or established pursuant to general law, see, e.g., s. 215.32(1)(b), F. S., and trustees appointed therefor, see, e.g., s. 121.045(2), F. S.; chs. 175 (Municipal Firefighters' Pension Trust Fund) and 185 (Municipal Police Officers' Retirement Fund), F. S.
Regarding the proviso's application to existing irrevocable trusts for the management and control of retirement systems or plans, there is a presumption that a legislative act operates prospectively unless there is a clearly expressed legislative intent that it is to operate retrospectively. See Dewberry v. Auto-Owners Insurance Co., 363 So.2d 1077 (Fla. 1978); Foley v. Morris, 339 So.2d 215 (Fla. 1976); and State ex rel. Riverside Bank v. Green, 101 So.2d 805 (Fla. 1958). No such legislative intent for retrospective application is expressed in the terms of s. 112.66, F. S., nor can such intent be reasonably inferred from the express terminology thereof. It is therefore my conclusion that, until and unless indicially determined otherwise, the requirement for an irrevocable trust to be created only by a special act of the Legislature applies prospectively and has no application to any irrevocable trusts that were created prior to the effective date of ch. 79-183, Laws of Florida, or to any preexisting rights, liabilities, obligations, or agreements created or entered into pursuant to preexisting laws.
The meaning of the phrase, `by special act,' must be construed from the plain and ordinary meaning of the words used unless a specific definition is statutorily provided or a different connotation is expressed in or necessarily implied from the context of the statute. See Milazzo v. State, 377 So.2d 1161 (Fla. 1979); Graham v. State, 362 So.2d 924 (Fla. 1978); and Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950). No statutory definition for this phrase is provided in part VII of ch. 112, F. S. The word `by' is defined in The Random House Dictionary of the English Language(1967), p. 203 as `according to,' pursuant to the `authority of,' `in conformity with,' or `through the means or medium of.' When used, as in s. 112.66(7), with reference to the authority of or the cause for an act or thing, `by' is defined in 12 C.J.S., p. 869 (1938), to mean `[b]ecause of, through, or in pursuance of . . . .' See also 5A Words and Phrases, pp. 790-811 (1968). Therefore, it can be said that the requirement that an irrevocable trust be created `by special act of the Legislature,' in the context in which it is used in s. 112.66(7), means that the irrevocable trust must be in accordance with or pursuant to a special act. There is no express or contextually implied limitation that the irrevocable trust be contained verbatim in a special act.
It is therefore my conclusion that, unless judicially interpreted otherwise, the irrevocable trust referred to in s. 112.66(7), F. S., need only be authorized by or created pursuant to a special act; such irrevocable trust could be created by ordinance enacted in accordance with or pursuant to a law enacted by the Legislature.
AS TO QUESTION 3:
You also question whether s. 112.661(8), F. S., vests control of the assets of municipal pension systems, including the investment of the pension funds, in the governing body of a municipality. Subsection (8) provides: `The instrument or instruments, ordinance, or statute under which a retirement system or plan operates shall provide that all assets of such retirement system or plan shall be held in trust by the board of trustees or, when an irrevocable trust does not exist, by the governmental entity.' This provision is also presumptively prospective in its application, since there is an absence of any clearly expressed legislative intent to the contrary. See Dewberry, supra; Foley,supra; and State ex rel. Riverside Bank, supra. Therefore, if a municipal retirement system or plan at present has an irrevocable trust established for the control and management of such system or plan, subsection (8) does not disturb the continued trust obligation of such plan's board of trustees. However, when an irrevocable trust is not in existence, the assets of the retirement system or plan shall be held in trust by the governmental entity (state, municipality, or special district) or by a board of trustees, as provided by any future instrument or instruments, ordinance, or statute under which the retirement system or plan operates.
Section 112.656(2), F. S., requires that every retirement system or plan must have one or more named fiduciaries with authority to control and manage the administration and operation of such retirement system or plan. This subsection goes on to provide, however, that `the plan administrator, and any officer, trustee, and custodian, and any counsel, accountant, and actuary of the retirement system or plan who is employed on a full-time basis,' must be included as fiduciaries of such system or plan.
While the governing body of a municipality retains the legislative power (except in those cases in which a municipality has elected to participate in the Florida Retirement System or when there are other irrevocable plans) to change retirement benefits or to adjust such benefits consistent with the retirement plan, the Florida Statutes, and the constitution, the power to amend an existing retirement system or plan in order to transfer the authority to control and manage the administration, operation, and investment of the trust assets or funds is circumscribed by any preexisting laws or irrevocable trusts established pursuant thereto which vest the control of, and investment of, such trust assets and the operation of any trust fund or retirement plan in other officials, units, agencies, branches, departments, boards, or institutions of municipal government.
Section 112.66(8), F. S., is consistent with the express legislative intent of the enactment of part VII, ch. 112, F. S., which is to implement s. 14, Art. X, State Const., and to maximize the protection of public employee retirement benefits and the funding thereof on a sound actuarial basis. The language of subsection (8) does not appear to effectuate a substantive alteration or transfer of the control and management of the administration and operation of a retirement system or plan or the investment and control of such plan's trust assets.
AS TO QUESTION 4:
Finally you question whether the City of Pensacola Pension Board can be considered a `plan administrator' within the meaning of s.112.66(2), F. S. Such designation would apply to any public retirement plans established in the future or any amendment to any existing retirement systems or plans as authorized by law. Under existing public employee retirement systems or plans, the person or persons vested with the authority to control and manage the administration and operation of such systems or plans continue to exercise such authority until a future law amends the plan in question and vests the authority to manage and control such pension system or plan elsewhere.
Section 112.625(2), F. S., defines `plan administrator' to mean `the person so designated by the term of the instrument or instruments, ordinance, or statute under which the plan is operated.' This subsection further provides that, if a `plan administrator' has not been designated, `the plan sponsor shall be considered the plan administrator.' The plan sponsor is the municipality or special district for local retirement plans, and the state is plan sponsor for the Florida Retirement System.
There is no expressed legislative intent that this definition limits the word `person' as the plan administrator to mean a natural person. Cf. s. 1.01(3), F. S., providing that, when the context permits, the word `person' as used in any of the Florida Statutes includes, among other things, individuals, firms, associations, partnerships, trusts, fiduciaries, and corporations. Certainly, if the plan sponsor, an artificial government entity, can be considered the plan administrator, in the absence of a contrary legislative intent expressed in this context, a pension board could be designated the plan administrator. It is therefore my opinion that, until legislatively or judicially determined to the contrary, the Pension Board of the City of Pensacola can be designated the `plan administrator' by any law, instrument, or ordinance enacted pursuant thereto that amends the city's pension or retirement system.
Prepared by: Craig Willis, Assistant Attorney General