526 So.2d 697 (1988)
Denyse Ann GRISS a/K/a Denyse Ann Ammirata, Appellant,
v.
Jack GRISS, Appellee.
No. 87-1454.
District Court of Appeal of Florida, Third District.
May 3, 1988.
Rehearing Denied June 30, 1988.
*698 Segall & Gold and Norman Segall, Coral Gables, for appellant.
Sharon L. Zeller, Hollywood, for appellee.
Before BARKDULL, NESBITT and DANIEL S. PEARSON, JJ.
PER CURIAM.
Denyse Ammirata appeals an order of the trial court granting grandparent visitation with her natural son Jason, to Jack Griss, the maternal grandfather. Jack Griss cross-appeals the same order urging error in the severity of the limitation of visitation.
Jason is seven years old and the natural son of Denyse Ammirata. Jack Griss is Denyse's father, and Jason's grandfather. Jason was born out of wedlock. The putative father, Charles Nicosia, never legally acknowledged his paternity, nor was he ever adjudicated the father. Denyse's father and mother were divorced when she was two years old. Denyse and Jason lived with Jack Griss and Kay Griss (Jack Griss' mother), at their house at various times over a period of several years. Denyse and Jason left the Griss house permanently in July, 1985, when Denyse married Frank Ammirata. On September 21, 1985, Jack Griss shot and killed Denyse's husband, Frank Ammirata. Griss was later tried on charges of murder, and acquitted, having acted in self defense. Jack Griss petitioned the court for grandparent visitation with Jason in August, 1986. This was granted by the trial court with limitation. This appeal and cross-appeal ensued.
The complaint alleged that Nicosia was the father and although served with process he never appeared and a default was duly entered against him. The record reveals that some three months after the child was born Nicosia left, abandoned or otherwise deserted Denyse and the infant child. We hold that on these facts the trial court was justified in granting visitation pursuant to the provisions of Section 752.01(1)(c), Florida Statutes (1985).
On the cross-appeal, it appears that the limitations on visitation are in fact, unduly severe. We therefore affirm the main appeal by Denyse, and affirm the cross-appeal, but modify the order of visitation by providing that the trial court will reexamine the terms of the visitation 90 days after the mandate issues in this cause.
BARKDULL and NESBITT, JJ., concur.
DANIEL S. PEARSON, Judge, concurring.
I am fairly confident that today's decision will be cited as precedent for the argument that a court is empowered to give to a grandparent visitation rights with his or her grandchild even though the grandparent's own son or daughter, as custodian of the grandchild, is resisting the visitation. I *699 also foresee that counsel for the resistor will counter that the question of the right of the resisting parent to exclude his or her own parent from visitation was not specifically discussed by the court and should thus be a matter of first impression.
Plainly, the majority opinion, in construing Section 752.01, Florida Statutes,[1] correctly, and without fanfare, treats the statute as being indifferent to the relationship between the grandparent seeking visitation and the custodial parent of the grandchild. Thus, whether these competing parties are related by blood or through marriage is deemed to be irrelevant to the question of whether the grandparent may be awarded rights of visitation. As the majority opinion implicitly notes, if it is in the best interests of the grandchild and the other prerequisites of the statute are met, any grandparent may be given visitation rights.
I have little doubt that the combatants in these sad and unseemly conflicts between a parent and grandparents of a sought-after grandchild are usually related by marriage, not blood. The enmity which simmers in tired old in-law jokes is too often brought to a boil when the noncustodial blood relative is not present to assert the grandparents' rights. It is not surprising, then, that most cases considering the subject of grandparent visitation rights are disputes between a grandparent and a son-in-law or daughter-in-law who has custody of the grandchild. See, e.g., Mauldin v. Richter, 515 So.2d 1030 (Fla. 1st DCA 1987); Beard v. Hamilton, 512 So.2d 1088 (Fla. 2d DCA 1987); Bates v. Wishart, 512 So.2d 977 (Fla. 2d DCA 1987)[2]; Enslein v. Gere, 497 So.2d 705 (Fla. 4th DCA 1986); Putnal v. Putnal, 392 So.2d 613 (Fla. 5th DCA 1981). Understandably, this exact scenario was envisioned by the members of the Florida Legislature considering the enactment of Section 752.01, the most recent grandparent visitation legislation.[3],[4]
But while the Legislature contemplated that the new law would give rights to the parents of a noncustodial parent who cannot or does not visit with the child, the Legislature also contemplated that the law would give rights to the parents of a custodial parent who is denying his or her own parents visitation with their grandchild. The legislative history reveals that the chief sponsors of the bill in the House introduced an amendment that changed the bill to read: "(1) The court may, upon petition *700 filed by a grandparent of a minor child, if such grandparent is not the parent of the person with whom the child primarily resides, award reasonable rights of visitation... ." CS/HB 487, Fla.H.R. Jour. 246 (Reg.Sess. 1984) (emphasis added). Representative Peter Deutsch explained on the House floor on April 23, 1984, that the amendment "brings the bill into conforming language with the Senate as well as deals with the specific problem of preventing parents from suing their own children." Fla.H.R., tape recording of proceedings (tape available from Florida House of Representatives) (floor debate on H.B. 487). The House first adopted this amendment, but reconsidered and withdrew it. The result was the present language of Section 752.01(1): "(1) The court may upon petition filed by a grandparent of a minor child award reasonable rights of visitation... ." CS/HB 487, Fla.H.R.Jour. 262 (Reg.Sess. 1984). Surely, if the Legislature had intended to draw a distinction between grandparents entitled to visitation, it would not have withdrawn the amendment.[5]
We must, of course, interpret the statute in accord with this clear expression of legislative intent. "Where the journals recording the history of the enactment of the statute show that language that gave a particular construction to it was taken out by an amendment, another provision being substituted that gives a different meaning, a construction based on the provision before its amendment will be avoided." Piezo Technology v. Smith, 413 So.2d 121, 123 (Fla. 1st DCA 1982) (quoting 30 Fla.Jur. Statutes § 103 (1974)), approved, 427 So.2d 182 (Fla. 1983). See also McDonald v. Roland, 65 So.2d 12 (Fla. 1953); State ex rel. Finlayson v. Amos, 76 Fla. 26, 79 So. 433 (1918).[6]
Finally  as the Legislature wisely recognized  it should make no difference which grandparent the parent seeks to deprive of visitation because ultimately, if indeed it is in the best interest of the grandchild that such visitation take place, the grandchild too will be deprived by the denial of it. As one sponsor observed on the floor of the House, "[T]his bill ... really is a children's visitation rights bill. And I don't think we feel it's fair to let spiteful parents in a particular case prevent their children from seeing their grandparents." Fla.H.R., tape recording of proceedings (April 23, 1984) (tape available from Florida House of Representatives) (floor debate on H.B. 487). See also Ramey v. Thomas, 483 So.2d 747, 748 (Fla. 5th DCA 1986) ("Surely a child's welfare is promoted in most cases by having grandparents, rather than by not having them.").
While "uncles, aunts, cousins, and especially grandparents sharing a household along with parents" is an environment in which over the years millions of our citizens *701 have grown up and "most, surely, have profited from," Moore v. City of East Cleveland, 431 U.S. 494, 504, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531, 541 (1977), it is sadly true that the bonds uniting the members of the nuclear family have deteriorated over the years. Visitation with grandparents may help to strengthen these bonds.
"It is common human experience that the concern and interest grandparents take in the welfare of their grandchildren far exceeds anything explicable in purely biological terms. A very special relationship often arises and continues between grandparents and grandchildren. The tensions and conflicts which commonly mar relations between parents and children are often absent between those very same parents and their grandchildren. Visits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. Neither the Legislature nor this Court is blind to human truths which grandparents and grandchildren have always known."

Mimkon v. Ford, 66 N.J. 426, 437, 332 A.2d 199, 204 (1975).
I concur.
NOTES
[1] Section 752.01, Florida Statutes (1987):

"(1) The court may, upon petition filed by a grandparent of a minor child, award reasonable rights of visitation to the grandparent with respect to the child when it is in the best interests of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved; or
(c) A parent of the child has deserted the child."
... .
[2] The court in Bates v. Wishart completely overlooked Section 752.01, Florida Statutes, and, quoting pre-statute case law, declared, "[a]n order granting visitation rights to a non-parent of a child whose custody has been awarded to a fit parent is unjustified and unenforceable." Bates v. Wishart, 512 So.2d at 979, quoting Sheehy v. Sheehy, 325 So.2d 12, 12 (Fla. 2d DCA 1975). Predictably, the Florida Supreme Court has granted review of Bates. No. 71,370 (Feb. 16, 1988).
[3] Representative Peter Deutsch, one of the House bill's chief sponsors, described such a scenario: "The daughter-in-law has custody... . So let's say someone's son dies, and the daughter-in-law then has custody of the grandchildren." Fla.H.R., Comm. on Judiciary, tape recording of proceedings (April 3, 1984) (tape available from Florida State Archives) (comment on H.B. 487). A similar comment was made on the House floor: "[I]f someone's son would die  a parent's son would die  and a daughter-in-law would have custody of their grandchildren... ." Fla.H.R., tape recording of proceedings (April 23, 1984) (tape available from Florida House of Representatives) (floor debate on H.B. 487).
[4] In 1978, the Legislature enacted Chapter 78-5, Laws of Florida, amending Section 61.13, Florida Statutes. The amendment allowed the court, only as part of a dissolution proceeding between the parents, Osteryoung v. Leibowitz, 371 So.2d 1068 (Fla. 3d DCA 1979), to award rights of visitation to grandparents if it was deemed to be in the child's best interests. However, the grandparents had no legal standing to appear or intervene and were not required to be made parties. Shuler v. Shuler, 371 So.2d 588 (Fla. 1st DCA 1979). The statute as amended in 1978 did not differentiate between grandparents related by blood and those related by marriage to the custodial parent.
[5] I would further observe that all fifty states have statutes that permit grandparents to gain visitation rights, see George, Children and Grandparents: The Right to Visit, Children's Legal Rights J., Fall 1987, at 7; Note, The Constitutional Constraints on Grandparents' Visitation Statutes, 86 Colum.L.Rev. 118, 119 (1986), and most of them provide that once a divorce has occurred, a parent of either party, including the custodial parent, may petition for visitation privileges, Ingulli, Grandparent Visitation Rights: Social Policies and Legal Rights, 87 W. Va.L.Rev. 295, 310-11 & nn. 95-96, 312 & n. 106 (1985) (noting that twenty states do not so provide); Note, Grandparent Visitation Statutes: Remaining Problems and the Need for Uniformity, 67 Marq.L.Rev. 730, 739 & n. 60 (1984) (earlier Note citing only four exceptions). See also 2 H. Clark, The Law of Domestic Relations in the United States § 20.7, at 537 (2d ed. 1987) (noting that "[s]ome statutes provide that only the parents of a noncustodial parent or of a deceased parent may be granted visitation rights.").
[6] Faced with a more "meager"  indeed nonexistent  legislative history of a similar visitation statute, a New Jersey trial judge speculated that

"[m]ore likely than not, its sponsors contemplated its application when the noncustodial parent does not have visitation rights (or perhaps does not exercise them) and the custodial parent denies the grandparents access to the child. When, however, the noncustodial parent has visitation, what right are the grandparents denied? They can always seek visitation through their own child."
In re Adoption of A Child, 140 N.J. Super. 91, 94-95, 355 A.2d 211, 213 (1976).
The New Jersey judge's assumption that children will never deny their own parents visitation with a grandchild is  unfortunately  not well founded. See, e.g., Ferrell v. Ruege, 397 So.2d 723 (Fla. 1st DCA 1981); Osteryoung v. Leibowitz, 371 So.2d 1068 (Fla. 3d DCA 1979). The case before us is but another example.